**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| **CHICAGO & VICINITY LABORERS'** ) | |
| **DISTRICT COUNCIL PENSION FUND,** ) | |
| **CHICAGO & VICINITY LABORERS'** ) | |
| **DISTRICT COUNCIL WELFARE FUND,** ) | |
| **CHICAGO & VICINITY LABORERS'** ) | |
| **DISTRICT COUNCIL RETIREE HEALTH** ) | |
| **AND WELFARE FUND, and CATHERINE** ) | |
| **WENSKUS, not individually but as** ) | |
| **Administrator of the Funds,** ) | |
| ) | |
| ) **Case No.** 21-cv-3618 | |
| **Plaintiff,** ) | |
| **and** ) | |
| ) | |
| ) | |
| ) | |
| **AG CONSTRUCTION SERVICES, INC.** ) | |
| **an Illinois corporation** ) | |
| **Defendant.** ) | |

## COMPLAINT

NOW COMES Plaintiffs, Chicago & Vicinity Laborers' District Council Pension Fund and Chicago & Vicinity Laborers' District Council Welfare Fund, Chicago & Vicinity Laborers' District Council Retiree Health and Welfare Fund, and Catherine Wenskus, Administrator of the Funds ("Funds"), by their attorneys, Patrick T. Wallace, Amy N. Carollo, G. Ryan Liska, Katherine C. Mosenson and Sara S. Schumann for their Complaint against Defendant AG Construction Services, Inc. ("Company"):

## FACTS COMMON TO ALL COUNTS

1.      Jurisdiction is based on Sections 502(e)(1) and (2) and 515 of the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. §§1132 (e)(1) and

(2) and 1145, Section 301(a) of the Labor Management Relations Act ("LMRA") of 1947 as amended, 29 U.S.C. §185(a), 28 U.S.C. §1331, and federal common law.

2.      Venue is proper pursuant to Section 502(e)(2) of ERISA, 29 U.S.C. §1132(e)(2), and 28 U.S.C. §1391 (a) and (b).

3.      The Chicago Laborers' Funds are multiemployer benefit plans within the meanings of Sections 3(3) and 3(37) of ERISA.  29 U.S.C. §1002(3) and 37(A).  They are established and maintained pursuant to their respective Agreements and Declarations of Trust in accordance with Section 302(c)(5) of the LMRA.  29 U.S.C. § 186(c)(5).  The Funds have offices and conduct business within this District.

4.      Plaintiff Catherine Wenskus is the Administrator of the Laborers' Funds, and has been duly authorized by the Funds' Trustees to act on behalf of the Laborers' Funds in the collection of employer contributions owed to the Funds and to the Construction and General District Council of Chicago and Vicinity Training Fund, and with respect to the collection by the Funds of amounts which have been or are required to be withheld from the wages of employees in payment of Union dues for transmittal to the Construction and General Laborers' District Council of Chicago and Vicinity (the "Union").  With respect to such matters, Wenskus is a fiduciary of the Laborers' Funds within the meaning of Section 3(21)(A) of ERISA, 29 U.S.C. §1002(21)(A).

5.      Defendant Company is an Illinois corporation that did and does conduct business within this District and was at all times relevant herein an employer within the meaning of Section 3(5) of ERISA, 29 U.S.C. §1002(5), and Section 301(a) of the LMRA, 29 U.S.C. §185(c).

6.      The Union is a labor organization within the meaning of 29 U.S.C. §185(a). The Union operates and maintains its office within the District.  The Union and Company are parties to a collective bargaining agreements, which carried/carry the term June 1, 2017 to May 31, 2021

2

and June 1, 2021 to May 31, 2026. ("Agreement"). (A copy of the "short form" Agreement entered into between the Union and Company which Agreement adopts and incorporates Master Agreements between the Union and various employer associations, and also binds Company to the Laborers' Funds respective Agreements and Declarations of Trust is attached hereto as Exhibit A.)

7.      The Funds have been duly authorized by the Construction and General Laborers' District Council of Chicago and Vicinity Training Fund (the "Training Fund"), the Midwest Construction Industry Advancement Fund ("MCIAF"), the Mid-American Regional Bargaining Association Industry Advancement Fund ("MARBA"), the Chicagoland Construction Safety Council (the "Safety Fund"), the Laborers' Employers' Cooperation and Education Trust ("LECET"), the Concrete Contractors Association ("CCA"), the CDCNI/CAWCC Contractors' Industry Advancement Fund (the "Wall & Ceiling Fund"), the CISCO Uniform Drug/Alcohol Abuse Program ("CISCO"), the Laborers' District Council Labor Management Committee Cooperative ("LDCLMCC"), the Will Grundy Industry Trust Advancement Fund ("WGITA"), the Illinois Environmental Contractors Association Industry Education Fund ("IECA Fund"), the Illinois Small Pavers Association Fund ("ISPA"), and the Chicago Area Independent Construction Association ("CAICA") to act as an agent in the collection of contributions due to those Funds.

8.      The Funds' respective Agreements and Declarations of Trust obligate Company to make contributions on behalf of its employees covered by the Agreement for pension benefits, health and welfare benefits, for the training fund and to submit monthly remittance reports in which Company, *inter alia*, identifies the employees covered under the Agreement and the amount of contributions to be remitted to the Funds on behalf of each covered employee. Pursuant to the terms of the Agreement and the Funds respective Agreements and Declarations of Trust,

contributions which are not submitted in a timely fashion are assessed liquidated damages and interest.

9.     The Pension, Welfare and Retiree Health and Welfare Declaration of Trust Agreement documents provide Trustees with the powers to formulate, establish and maintain collection procedures for collection of contributions and those actions, procedures and polices shall be binding upon all Contributing Employers.

10.     The Funds' Amended and Restated Collection Policies and Procedures provides that in the event the Funds files suit against a Contributing Employer, any liquidated damages incurred by the Contributing Employer after the lawsuit is filed will be assessed liquidated damages at twenty percent (20%) of the contributions owed.  This Collection Policy was adopted by the respective Trustees for the Pension, Welfare and Retiree Health and Welfare Funds.

11.     The CBA provides that in the event the Trustees refer an account to legal counsel for collection of delinquent fringe benefit contributions the delinquent employer shall be liable for reasonable attorneys, audit costs, interest and filing costs incurred in the collection process.

12.     The Funds' Collection Policy provides any delinquent contributions owed by a Contributing Employer shall bear interest in the amount of twelve percent (12%) per annum, compounded from the due date until the obligation is fully satisfied.

13.     In addition to fringe benefit reports, the CBA obligates the Company to submit and pay Dues Reports.  The Company is required to deduct from the wages of employees covered by said contract working dues in the amount of three and three-quarter percent (3.75%) of gross wages and shall remit monthly to the Union office the sums so deducted.

14.     The CBA also requires the Company to pay contributions to the Industry Funds. These contributions are paid as part of the Dues Reports.   The CBA requires the Company to

4

pay eight cents ($.08) for each hour worked by employees covered by the CBA to the Chicago

Area Independent Construction Association ("CAICA"), seven cents ($.07) for each hour to the

Chicago-Area Laborers-Employers Cooperation and Educational Trust ("LECET") and

seventeen cents ($.17) per hour to the Laborers' District Council Laborer Management

Cooperation Committee ("LMCC"). The total Industry Fund contribution is thirty-two cents

($.32) per hour.

15.     Dues Reports and contributions are due by the 10th day following the month in

which the work was performed. Dues Reports and contributions which are not submitted in a

timely fashion are assessed liquidated damages at ten percent (10%) of the union dues report

amount.

16.     Pursuant to agreement, the Funds have been duly designated to serve as collection

agents for the Union in that the Funds have been given the authority to collect from employers

union dues which should have been or have been deducted from the wages of covered

employees.

## COUNT I

## (Failure To Report and Pay Employee Benefit Contributions to Funds)

17.     The Funds re-allege and incorporate the allegations contained in paragraphs 1-16

of this Complaint.

18.     Notwithstanding the obligations imposed by the Agreement and the Funds'

respective Agreements and Declarations of Trust, the Company performed covered work during

the months August 2020 to current and:

(a)     failed to pay contributions to Laborers' Welfare Fund of the Health and Welfare Department of the Construction General Laborers' District Council of Chicago and Vicinity for the period of August 2020 forward, thereby depriving the Welfare Fund of contributions, income and information needed to administer the Fund and jeopardizing the pension benefits of the participants and beneficiaries;

(b)     failed to pay contributions to the Laborers' District Council Retiree Health and Welfare Fund for the period of August 2020 forward, thereby depriving the Retiree Fund of contributions, income and information needed to administer the Fund and jeopardizing the health and welfare benefits of the participants and beneficiaries;

(c)     failed to pay contributions to the Laborers' District Council Retiree Health and Welfare Fund of the Construction and General Laborers' District Council of Chicago and Vicinity for period of August 2020 forward, thereby depriving the Welfare Fund of contributions, income and information needed to administer the Fund and jeopardizing the health and welfare benefits of the participants and beneficiaries;

(d)     failed to pay contributions to the Laborers' Training Fund for the period of August 2020 forward, thereby depriving the Laborers' Training Fund of contributions, income and information needed to administer the Fund and jeopardizing the training fund benefits of the participants and beneficiaries;

(e)     failed to pay contributions owed to one or more the affiliated funds identified above for the period of August 2020 forward,  thereby depriving said fund(s) of contributions, income and information needed to administer the Fund and jeopardizing the training fund benefits of the participants and beneficiaries.

19.     The Funds' Collection Policy provides fringe benefit reports shall be received and paid by the Company on or before the tenth day of the first month following the month in which covered work was performed and are deemed delinquent on the tenth day of the second month in which work was performed.  This thirty (30) day grace period which to pay monthly fringe benefit reports is also provided for in the Agreement.

20.     The Fund Collection Policy provides that in the event no lawsuit is on file at the time the fringe benefit reports become delinquent, liquidated damages shall be assessed at 10% of the report amount.   However, in the event there is a lawsuit on file against the Contributing Employer, any fringe benefit reports paid by the Contributing Employer after the thirty (30) day grace period will be assessed liquidated damages at twenty percent (20%) of the report amount.

21.     The Company paid its June 2020 through July 2020 beyond the thirty (30) day grace period and as a result those reports were assessed liquidated damages at 10% totaling $2,455.88.  Additionally, any monthly fringe benefit reports that become delinquent during this lawsuit shall be assessed liquidated damages at 20% of the report amount.  An itemized history of the liquidated damages assessed and currently due is attached as Exhibit B.

22.     The Company's actions in failing to submit timely reports and contributions violate section 515 of ERISA, 29 U.S.C. §1145, and Section 301 of the LMRA.  29 U.S.C. §185.

23.     Pursuant to Section 502(g)(2) of ERISA, 29 U.S.C. §1132 (g)(2), Section 301 of the LMRA, 29 U.S.C. §185, federal common law, and the terms of the Agreement, the Funds' respective Trust Agreements and Collection Policy,  the Company is liable to the Laborers' Funds for unpaid contributions, liquidated damages, accumulated liquidated damages on the late paid reports, interest, reasonable attorneys' fees and costs.

WHEREFORE, Plaintiffs Laborers' Funds respectfully request that this Court:

a.      Order Defendant AG Construction Services, Inc. to submit its fringe benefit reports for the months August 2020 to current;

b.      entering judgment against Defendant AG Construction Services, Inc. the amount revealed as due by the August 2020 forward reports, plus liquidated damages, statutory interest, attorneys' fees and costs;

c.      entering judgment against Defendant AG Construction Services, Inc. the amount of $2,455.88 for accumulative liquidated damages on the late paid June 2020 through July 2020 fringe benefit reports;

d.      awarding Plaintiff Laborer's Funds any further legal and equitable relief as the Court deems appropriate.

## COUNT II

### (Failure To Timely Pay Union Dues to Laborers' Funds)

24.      The Funds re-allege and incorporate the allegations contained in paragraphs 1-23 of this Complaint.

25.      Notwithstanding the obligations imposed by the Agreement, the Company failed to submit and pay its monthly union dues contributions for August 2020 to current.

26.      The Company also paid the following union dues reports beyond the time proscribed by the Agreement resulting in liquidated damages totaling $344.42:  March 2020, April 2020, May 2020, June 2020 and July 2020.   An itemization of the liquidated damages currently due is attached as Exhibit C.

27.      Pursuant to the Agreement, the Company is liable to the Laborers' Funds for the unpaid union dues, as well as liquidated damages, accumulative liquidated damages, reasonable

Case: 1:21-cv-03618 Document #: 1 Filed: 07/08/21 Page 9 of 12 PageID #:9


attorneys' fees and costs as the Union's collection agent, and such other legal and equitable relief as the Court seems appropriate.

WHEREFORE, Plaintiffs Laborers' Funds respectfully request that this Court:

a.        order Defendant AG Construction Services, Inc., to submit union dues contribution reports and/or contributions to Laborers' Funds for the period of August 2020 forward;

b.        enter judgment in sum certain in favor of the Plaintiff Laborers' Funds against Defendant AG Construction Services, Inc., in the amount of dues contributions shown to be due on the August 2020 forward reports plus 10% liquidated damages, interest. attorneys' fees and costs;

c.        enter judgment against Defendant AG Construction Services, Inc., in the amount of $344.42 for the liquidated damages assessed against the February 2020, April 2020, May 2020, June 2020 and July 2020 late paid union dues reports; and

d.        awarding Plaintiffs Funds any further legal and equitable relief as the Court deems appropriate.

July 8, 2021

Respectfully submitted,

By: /s/ G. Ryan Liska

G. Ryan Liska
Laborers' Pension and Welfare Funds
Office of Fund Counsel
111 W. Jackson Blvd., Suite 1415
Chicago, IL 60604
(312) 692-1540



# CONSTRUCTION & GENERAL LABORERS'
## DISTRICT COUNCIL OF CHICAGO AND VICINITY
### AFFILIATED WITH THE LABORERS' INTERNATIONAL UNION OF NORTH AMERICA
999 McCLINTOCK DRIVE • SUITE 300 • BURR RIDGE, IL 60527 • PHONE: 630/655-8289 • FAX: 630/655-8853

## INDEPENDENT CONSTRUCTION INDUSTRY COLLECTIVE BARGAINING AGREEMENT

It is hereby stipulated and agreed by and between __A.G. Construction Services Inc.__ ("Employer") and the Construction and General Laborers' District Council of Chicago and Vicinity, Laborers' International Union of North America, AFL-CIO ("Union"), representing and encompassing its affiliated Local Unions, including Local Nos. 1, 2, 4, 5, 6, 68, 75, 76, 152, 225, 582, 681, 1001, 1035, 1092, together with any other Local Unions that may come within its jurisdiction ("Local Unions"), and encompassing the geographic areas of Cook, Lake, DuPage, Will, Grundy, Kendall, Kane, McHenry and Boone counties, Illinois, that:

1. Recognition. In response to the Union's request for recognition as the majority representative of the unit employees, the Employer recognizes the Union as the sole and exclusive collective bargaining representative under Section 9(a) of the NLRA for the employees now and hereinafter employed under this Agreement with respect to wages, hours and other terms and conditions of employment. This recognition is based on the Union having shown, or having offered to show, evidence of its majority support. The Employer has not assigned its bargaining rights to any entity for purposes of multi-employer bargaining, and it hereby revokes its prior assignment of bargaining rights, if any. The Employer further voluntarily elects not to assign such bargaining rights to any person, entity or association for purposes of multi-employer bargaining without prior written approval from the Union. Notwithstanding the number of persons employed under this Agreement, the Employer shall abide by this Agreement and all extensions hereof, and it waives any right or defenses it may have to terminate this Agreement or refuse to negotiate a successor agreement based upon the number of persons employed, and it consents to enforcement of this commitment directly through any tribunal or court of competent jurisdiction.

2. Labor Contract. The Employer affirms and adopts the applicable Collective Bargaining Agreement(s), as designated by the Union in its sole discretion, between the Union and the Builders Association, the Chicago Area Independent Construction Association, the Chicago Area Rail Contractors Association, the Chicago Area Scaffolding Association, the Chicago Demolition Contractors' Association, the Concrete Contractors Association of Greater Chicago, the Contractors Association of Will and Grundy Counties, the Fox Valley Associated General Contractors, the Great Lakes Contractors Association, the Midwest Wall and Ceiling Contractors, the Illinois Environmental Contractors Association, the Illinois Road and Transportation Builders Association, the Illinois Small Pavers Association, the Mason Contractors Association of Greater Chicago, the Underground Contractors Association, and all other employer associations with whom the Union or its affiliated Local Unions have an agreement. If the applicable Collective Bargaining Agreement(s) expire during the term of this Agreement, any limitation on the right to strike shall also expire until a successor labor agreement has been established, which shall be incorporated retroactively herein. This Agreement supersedes all contrary terms in the applicable Collective Bargaining Agreement(s).

3. Total economic increase. The Employer shall pay its employees a total economic increase of $2.17 per hour effective June 1, 2017; $2.24 per hour effective June 1, 2018; $2.31 per hour effective June 1, 2019; and $2.39 per hour effective June 1, 2020, said amounts to be allocated between wages, fringe benefits and other funds by the Union in its sole discretion. Effective June 1, 2017, the minimum wage rate shall be $41.20 per hour.

4. Checkoff Deductions and Remittances. The Employer shall deduct from the wages of employees uniform initiation fees, assessments, membership dues, and working dues in such amounts as the Union shall from time to time establish, and shall remit monthly to the designated Union office the sums so deducted, together with an accurate list showing the employees from whom dues were deducted, the employees' individual hours, gross wages and deducted dues amounts for the monthly period, not later than the tenth (10th) day of the month following the month for which said deductions were made. If the Employer fails to timely remit any amounts to the Union or its affiliated fringe benefit funds that are required under this Agreement, it shall be obligated to the Union for all costs of collection, including attorney fees.

The Employer shall further deduct an amount designated by the Union for each hour that an employee receives wages under the terms of this Agreement on the basis of individually signed voluntary authorized deduction forms and shall pay over the amount so deducted to the Laborers' Political League ("LPL") or to a designated appointee, not later than the tenth (10th) day of the month next following the month for which such deductions were made. LPL remittances shall include a report of the hours worked by each Laborer for whom deductions are made. Remittances shall be made by a separate check payable to the Laborers' Political League. The Employer shall be paid a processing fee each month from the total amount to be transmitted to the LPL to be calculated at the Illinois Department of Revenue or other applicable standard.

5. Work Jurisdiction. This Agreement covers all work within the applicable Collective Bargaining Agreements and all work within the Union's trade and geographic jurisdiction as set forth in the Union's Statement of Jurisdiction, which are incorporated by reference into this Agreement. The Employer shall assign all work described therein to its Union-represented Laborer employees and acknowledges the appropriateness of such assignment. Neither the Employer nor its work assignments as required under this Agreement shall be stipulated or otherwise subject to adjustment by any jurisdictional disputes board or mechanism except upon written notice by and direction of the Union.

6. Subcontracting. The Employer, whether acting as a contractor, general manager or developer, shall not contract or subcontract any covered work to be done at the site of construction, alteration, painting or repair of a building, structure or other work to any person, corporation or entity not signatory to or covered by a collective bargaining agreement with the Union. This obligation applies to all tiers of subcontractors performing work at the site of construction. The Employer shall further assume the obligations of all tiers of its subcontractors for prompt payment of employees' wages and other benefits required under this Agreement, including reasonable attorneys' fees incurred in enforcing the provisions hereof.

7. Fringe Benefits. The Employer agrees to pay the amounts that it is bound to pay under said Collective Bargaining Agreements to the Health and Welfare Department of The Construction and General Laborers' District Council of Chicago and Vicinity, the Laborers' Pension Fund (including Laborers' Excess Benefit Funds), the Fox Valley Benefit Funds, the Construction and General Laborers' District Council of Chicago and Vicinity Apprentice and Training Trust Fund, the Chicago Area Laborers-Employers Cooperation Education Trust, the LDC/LMCC, and to all other designated Union-affiliated benefit and labor-management funds (the "Funds"), and to become bound by and be considered a party to the agreements and declarations of trust creating the Funds. The Employer further affirms that all prior contributions paid to the Welfare, Pension, Training and other Funds were made by its duly authorized agents at all proper rates, and evidence the Employer's intent to be bound by the trust agreements and Collective Bargaining Agreements in effect when the contributions were made, and acknowledging the report form to be a sufficient instrument in writing to bind the Employer to the applicable collective bargaining agreements.

8. Contract Enforcement. All grievances filed by either party arising hereunder shall, at the Union's discretion, be submitted to the Chicago District Council Grievance Committee for final and binding disposition in lieu of another grievance committee, provided that deadlocked grievances shall be submitted to final and binding arbitration upon timely demand. Should the Employer fail to comply within ten (10) days with any binding grievance award, whether by grievance committee or arbitration, it shall be liable for all costs and legal fees incurred by the Union to enforce the award. Notwithstanding anything to the contrary, nothing herein shall limit the Union's right to strike or withdraw its members because of non-payment of wages and/or fringe benefit contributions, failure by the Employer to timely remit dues to the Union, or non-compliance with a grievance or arbitration award. The Employer's violation of any provision of this paragraph will give the Union the right to take any other legal and economic action, including but not limited to all remedies at law or equity. It is expressly understood and agreed that the Union's right to take economic action is in addition to, and not in lieu of, its rights under the grievance procedures. Where necessary to correct contract violations, or where no acceptable steward is currently employed, the Union may appoint and place a steward from outside the workforce at all job sites.

9. Successors. In the event of any change in the ownership, management or operation of the Employer's business or substantially all of its assets, by sale or otherwise, it is agreed that as a condition of such sale or transfer that the new owner or manager, whether corporate or individual, shall be fully bound by the terms and conditions of this Agreement. The Employer shall provide no less than ten (10) days' prior written notice to the Union of the sale or transfer and shall be obligated for all expenses incurred by the Union to enforce the terms of this paragraph.

10. Termination. This Agreement shall remain in full force and effect from June 1, 2017 (unless dated differently below) through May 31, 2021, and shall continue thereafter unless there has been given written notice, by certified mail by either party hereto, received no less than sixty (60) nor more than ninety (90) days prior to the expiration date, of the desire to modify or amend this Agreement through negotiations. In the absence of such timely and proper notice, the Employer and the Union agree to be bound by the new applicable association agreement(s), incorporating them into this Agreement and extending this Agreement for the life of the newly negotiated agreements, and thereafter for the duration of successive agreements, unless and until timely notice of termination is given not less than sixty (60) nor more than ninety (90) days prior to the expiration of each successive Collective Bargaining Agreement. Notwithstanding the foregoing, the Union in its sole discretion may terminate this Agreement at any time upon written notice should the Employer fail to comply with its bonding obligations or if the Employer is a joint employer with or alter ego of another entity with an outstanding delinquency to the Union's affiliated fringe benefit funds.

11. Execution. The signatory below warrants his or her receipt of the applicable Collective Bargaining Agreement(s) and authorization from the Employer to execute this Agreement, without fraud or duress, and with full knowledge of the obligations and undertakings contained herein. The parties acknowledge and accept facsimile and electronic signatures on this Agreement as if they were the original signatures.

Dated: __August 2__ , 20 __18__

ACCEPTED:

Laborers' Local Union No. __ONE__

By: _____

CONSTRUCTION AND GENERAL LABORERS'
DISTRICT COUNCIL OF CHICAGO AND VICINITY

By: _____
James P. Connolly, Business Manager

By: _____
Charles LoVerde, Secretary-Treasurer

For Office Use Only: __C.A.I.C.A.*__

__A.G. Construction Services Inc.__
(Employer)

FEIN No.: _____

By: __Anthony Garcia President__
(Print Name and Title)

_____
(Signature)

__15308 Lincoln__
(Address)

__Harvey, IL 60571__
(City, State and Zip Code)

__708 932-4591__
(Telephone/Telefax)

__agconstructionsvc@gmail.com__
(Email Address)

• RECEIVED AUG 2 2 2018 •

EXHIBIT A

Effective June 1, 2017     WHITE - LOCAL UNION   •   CANARY - TRUST FUND   •   PINK - DISTRICT COUNCIL   •   GOLD - EMPLOYER

# LABORERS' PENSION & WELFARE FUNDS
## CONTRACTOR LIQUIDATED DAMAGES HISTORY

Contractor Number: 035728
Contractor Name: AG CONSTRUCTION SERVICES, INC.
Address: PO BOX 1075
HARVEY IL, 604267075

Phone: (708) 932-4571
Status: Active
Outstanding Balance: $2,455.88

| Invoice # | Report Month | Received Date | Trans # | LD % | TOTAL LD | | | | WELFARE LD | | | | RETIREE WELFARE LD | | | | PENSION LD | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | LD $ | Adjustment | Payment | Write Off | Welfare LD | Welfare Adjustment | Welfare Payment | Welfare Write Off | Ret. Welfare LD | Ret. Welfare Adjustment | Ret. Welfare Payment | Ret. Welfare Write Off | Pension LD | Pension Adjustment | Pension Payment | Pension Write Off |
| 52792 | 07/2020 | 10/15/2020 | 1634256 | 10% | $1,063.89 | $ - | $ - | $ - | $ 380.84 | $ - | $ - | $ - | $ 184.28 | $ - | $ - | $ - | $ 498.77 | $ - | $ - | $ - |
| 52516 | 06/2020 | 08/21/2020 | 1629535 | 10% | $1,391.99 | $ - | $ - | $ - | $ 498.29 | $ - | $ - | $ - | $ 241.11 | $ - | $ - | $ - | $ 652.59 | $ - | $ - | $ - |
| | | | | | $2,455.88 | $ - | $ - | $ - | $ 879.13 | $ - | $ - | $ - | $ 425.39 | $ - | $ - | $ - | $1,151.36 | $ - | $ - | $ - |
| | | | | | $2,455.88 | | | | $ 879.13 | | | | $ 425.39 | | | | $1,151.36 | | | |



EXHIBIT B

AG CONSTRUCTION SERVICES INC
PO BOX 1075
HARVEY IL 60426-2913

July 8, 2021
Contractor # 035728

Dear Contractor:

According to our records, your following report(s) were submitted late. As a result, you owe the Work Dues and Ancillary Funds an amount of $344.42 late fee.

| Report Month | Receipt Date | Total Gross Wages | Total Hours | Expected Amount | Remitted Amount | Expected Shortage Penalty | Expected Late Fee | Applied Penalty | Unpaid Penalty |
|---|---|---|---|---|---|---|---|---|---|
| 07/2020 | 10/26/2020 | $13,322.22 | 351.00 | $ 611.91 | $ 611.91 | $0.00 | $61.19 | $0.00 | $61.19 |
| 06/2020 | 08/24/2020 | $17,455.90 | 459.25 | $ 801.55 | $ 801.56 | $0.00 | $80.15 | $0.00 | $80.15 |
| 05/2020 | 07/22/2020 | $10,405.14 | 283.00 | $ 480.75 | $ 480.76 | $0.00 | $48.07 | $0.00 | $48.07 |
| 04/2020 | 07/02/2020 | $18,322.76 | 479.50 | $ 840.56 | $ 840.56 | $0.00 | $84.05 | $0.00 | $84.05 |
| 03/2020 | 07/02/2020 | $15,428.51 | 409.50 | $ 709.62 | $ 709.62 | $0.00 | $70.96 | $0.00 | $70.96 |

|  |  | | | | | | Total Unpaid Penalties | | $344.42 |

* Under Article VI, Paragraph 2, the Working Dues Report is due no later than the 10th of the month following the month for which such deductions were made.

If you fail to remit the amount due, legal action may be initiated to collect this amount, and you will be liable for all attorney fees and court costs incurred to enforce your obligations.

Please send all your remittances to this address:

ATTN: Work Dues Department
LABORERS' DISTRICT COUNCIL
999 McClintock Drive, Suite 300
Burr Ridge, IL 60527

If you have any questions, please contact us at (630) 655-8765 (phone), (630) 655-8864 (fax) or by e-mail at workdues@liunachicago.org.

Sincerely,

Work Dues Department
Chicago Laborers' District Council



EXHIBIT
C